United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

ISRAEL ILARIOS MORALES,

Petitioner,

v.

SERGIO ALBARRAN, et al.,

Respondents.

Case No. 3:26-CV-10973

**ORDER GRANTING *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Before the Court is Petitioner Israel Ilarios Morales's *ex parte* application for a temporary restraining order ("TRO"), seeking release from the custody of U.S. Immigration and Customs Enforcement ("ICE"). *See* ECF No. 2. The application for TRO was filed shortly after Mr. Morales filed a petition for writ of habeas corpus against Respondents. *See* ECF No. 1 ("Pet.").

For the following reasons, the application is GRANTED.

## I. BACKGROUND

On his way to work, Mr. Morales was arrested and detained by ICE on September 25, 2026. He is currently being detained at the ICE office located at 630 Sansome, San Francisco, California. Mr. Morales was in a vehicle that was stopped by ICE officials in San Mateo, California on September 25, 2026. The driver and Petitioner were both arrested and brought to the ICE office in San Francisco, California. Mr. Morales was asked his name and ordered removed from the vehicle. He was handcuffed and arrested. After being handcuffed, Mr. Morales was placed into an ICE vehicle and was transported to a nearby parking lot. There, an ICE officers then asked him, "Oh, so you are from Guatemala?" and he affirmed. The officer asked a few questions regarding whether he had any health problems, placed cuffs around his ankles, and then he was then taken to the San Francisco ICE office at 630 Sansome Street. Mr. Morales alleges that he was arrested and detained

without a properly executed arrest warrant. *See* ECF No. 2-3 at 3 ("Mr. Morales was not told why he was being arrested."). Mr. Morales alleges that "an ICE officer told him his mistake was being in the car with his boss, otherwise he would not have been arrested today." *Id.*

Mr. Morales was previously deported from the United States to Guatemala under a removal order in approximately 2010. A decade later, Petitioner re-entered the United States without inspection. Petitioner has lived in the United States since approximately 2023. Mr. Morales was arrested for petty theft on or about December 24, 2009, while shopping for Christmas gifts for his nephews. Following detention, Mr. Morales was deported to Guatemala in 2010.

Mr. Morales seeks an order from this Court that he be released from Respondents' custody, and, in the interim, an order from the Court that he is not to be removed from this judicial district or removed from the United States, pending final resolution of their petition for writ of habeas corpus. Alternatively, Petitioner seeks an order from this Court that Respondents must provide Petitioner with an individualized bond hearing.

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

United States District Court
Northern District of California

## III. DISCUSSION

To start, the requirements for issuing a TRO without notice are met here. *See* Fed. R. Civ. P. 65(b)(1). Mr. Morales's counsel has set out specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition. Mr. Morales's counsel has also made efforts to give notice to Respondents regarding the filing of this TRO. *See* ECF No. 2-2 at 2 ("After filing the petition, I emailed Civil Chief Pamela Johann . . . . Shortly before filing the TRO, I emailed Ms. Johann a copy of the TRO and accompanying documents.").

Next, all four *Winter* factors cut in favor of a TRO.

First, Mr. Morales has demonstrated a likelihood of success on the merits of his procedural due process claim. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). The Due Process Clause typically "requires some kind of a hearing before the State deprives a person of liberty." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Immigration detention requires a showing of exigent circumstances. Mr. Morales argues that he is "neither a flight risk nor a danger to the community." ECF No. 2 at 9. On this record, the Court agrees. Mr. Morales has resided in the United States for around three years since reentering the country in 2023. There is no evidence that Mr. Morales has posed a danger to the community during that time. And Mr. Morales's record reveals that, in the past, he has only been arrested for petty theft, which is not a crime embodying danger to the community. It bears further emphasis that there is no evidence that Mr. Morales was ever convicted of a crime, which further buttresses Mr. Morales's likelihood of success on the merits. *See Garcia v. Albarran*, 2026 WL 2792662, at *2 (N.D. Cal. Sept. 17, 2026) ("The caselaw in this district is clear. Mr. Garcia's detention—absent being convicted of a crime—raises serious liberty and procedural due process concerns." (collecting cases)). Moreover, there is also no evidence on the record that Mr. Morales is a flight risk. Mr. Morales was not served with a warrant, and Mr. Morales argues that "the officers did not even

attempt to make an individualized flight risk determination." ECF No. 2 at 8. Mr. Morales also has family members in the United States—and a brother with lawful permanent residency status—facts of which appear to diminish the risk of flight. Moreover, Mr. Morales was told that "his mistake was being in the car with his boss, otherwise he would not have been arrested today." *See* ECF No. 2-3 at 3. That communication suggests that Mr. Morales was not the target of the ICE sting, further suggesting that Mr. Morales is neither a flight risk nor danger to the community. These circumstances warrant issuance of a TRO. *See Ayala v. Albarran*, 2026 WL 1179862, at *4 (N.D. Cal. Apr. 30, 2026).

Second, Mr. Morales is likely to suffer irreparable harm should the TRO not issue. The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Session*s, 872 F.3d 976, 995 (9th Cir. 2017). Mr. Morales has demonstrated that he is likely to suffer these irreparable harms should the TRO not issue. Mr. Morales alleges that he faces imminent deportation and transfer outside of this judicial district. The record supports these allegations. *See* ECF No. 2-3 at 1 ("I went to the window on the 6th floor and asked to meet with Mr. Israel Ilarios Morales. I was told by the security guard at the window that I better hurry because time was running out.").

Third, the balance of equities tips sharply in Mr. Morales's favor. The public interest also cuts in Mr. Morales's favor. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). If no TRO issues, Mr. Morales faces a severe deprivation of his constitutional liberty interest without the due process protections he is afforded. In contrast, the issuance of a TRO has a de minimis effect on the government, which faces a short delay in detaining Mr. Morales. Moreover, it bears mentioning that a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined

from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

Lastly, the Court determines that a security is not necessary. "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Id. Because the Court perceives no prejudice to Respondents resulting from this TRO, issuance without a security is appropriate.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Mr. Morales's application is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are ORDERED to release Mr. Morales immediately from Respondents' custody and ENJOINED AND RESTRAINED from re-detaining Mr. Morales without notice and a pre-deprivation hearing before a neutral decisionmaker. Respondents are ENJOINED from removing Mr. Morales from this judicial district, and, if they have already transferred him, are ORDERED to return him to this judicial district.

(3) Respondents are PROHIBITED from removing Mr. Morales from the United States until these proceedings have terminated.

(4) Respondents are PROHIBITED from imposing new conditions of release, such as electronic monitoring and in-person or virtual check ins.

(5) Respondents are ORDERED to return any of Mr. Morales's personal property confiscated upon his arrest.

United States District Court
Northern District of California

(6) Respondents are ORDERED TO SHOW CAUSE in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, at 9:00 a.m. on October 5, 2026, why a preliminary injunction should not issue. Respondents SHALL file a response to Petitioner's motion by no later than September 30, 2026, at 12:00 p.m. Any reply SHALL be filed by October 2, 2026, at 12:00 p.m. The assigned Judge may modify this schedule as appropriate.

(7) Mr. Morales SHALL serve Respondents the summons, petition, and this order by September 26, 2026, at 12:00 p.m. Service by email is permitted. Mr. Morales SHALL file proof of service by September 28, 2026.

(8) Respondents SHALL file a status report regarding compliance with this order by September 28, 2026, at 12:00 p.m.

(9) This Order shall remain in effect until October 9, 2026.

Dated: September 25, 2026

BETH LABSON FREEMAN
United States District Judge